Our first case of the day is United States v. Hodge, No. 15-2621. Good morning. Good morning. May it please the Court, my name is Richard De La Fera. I represent the appellant, Richard Antonio Hodge, and I would ask to reserve three minutes for rebuttal. That will be granted. Thank you. I've raised seven issues in this brief. There's a lot of moving parts here. There certainly are. There certainly are, given the federal crimes that were charged, the territorial crimes. With the Court's indulgence, I'd like to start with the preliminary issue that I think is a very important issue concerning Mr. Hodge's request for counsel of choice in the denial of the district court of his counsel of choice. Interestingly, the record reflects a colloquy with Mr. Hodge directly in this issue of his counsel of choice, solely whether he intends to stay with the public defender or to represent himself. Wasn't there an interaction earlier where Mr. Joseph had indicated a long time in advance, maybe something was going to happen, but then it's literally the eve of trial when there's an attempt to make a switch? Yes, and all of that is accurate in the record. Doesn't the district court have not just the discretion but the obligation to see that the system doesn't get gamed, to see that people aren't messing with the Court's calendar in a way for strategic advantage? I agree with that, and I think Morris v. Slappy of the United States Supreme Court pretty much indicated that. But what the case law suggests, and particularly the case law out of this circuit, is there has to be an inquiry of the defendant for the district court to make the determination as to whether the defendant is simply trying to game the system, or is there a legitimate reason for the request to substitute counsel? And there is nothing in this record. There are two pages in the transcript where Judge Gomez directly colloquies the defendant, and it has nothing to do with why is he dissatisfied with Attorney Jupiter. It only has to do with you either stay with Attorney Jupiter or you represent yourself. Isn't it really fair, though, to say, I mean, you've got a colloquy with the AUSA. Mr. Joseph is there, and actually Mr. Hodge is there. Mr. Hodge didn't say a word. I mean, is it fair now to sort of on appeal say he should have done something different when no one said a word really there? Well, Judge, I read the case law to mean that the court has an obligation to directly colloquy the defendant. And as a practical matter, I don't think to expect a defendant to stand up and speak to the court without being addressed by the court, I don't think that. . . Which case sets a bright line rule for that, that it must be a defendant who is colloquied? Well, Judge, the cases of McMahon and of Welty. Welty says without, well, without minimal inquiry into the reason for the defendant's dissatisfaction. Right. So I see what Your Honor is saying. I have not seen a case where it says the defendant must be colloquied. The colloquy with the counsel with whom the defendant has an apparent dissatisfaction with is sufficient. I have not seen that in all candor, Your Honor. However, I think that all of the cases that we have cited, both on my side and on the government's side, clearly show that in those cases the court had a direct colloquy with the defendant himself and didn't just rely on the representations of the public defender because the public defender was asked, is there a conflict? Well, Malcolm, excuse me. McMahon, Your Honor. McMahon v. Faulconer. I mean, the language there indicates that there would be reversal if there were, quote, no inquiry, unquote. But it doesn't say, as you're acknowledging, inquiry of the defendant personally. Here there was inquiry and it was pretty careful inquiry and it was inquiry with the defendant sitting right there. I mean, there are cases, we do have cases where there are some rights that the Supreme Court said you can't rely on what the lawyer is saying, you have to ask the defendant personally. But we've got nothing like that on this substitution of counsel point. And we'd be moving out further than evidently anybody's ever gone before on that, right? Well, I don't know. I think it would only be stating what has been clearly apparent from the record in these multitude of cases that we have cited in the briefs. And I'm looking at McMahon, and if I can suss out the page, it looks like page 942 of 821 Federal 2nd. Other than the judge's reference to counsel's communication to the court that he represented the petitioner diligently, the record reveals absolutely no inquiry by the trial court into appellant McMahon's dissatisfaction with counsel. So even given that, with the record that we have, there's no discussion about the dissatisfaction with counsel with the public defender. And I think to expect the public... How do we know there was dissatisfaction? Don't we know that he wanted somebody different? We know that. That might be, you know, this lawyer's fine, but I have somebody better, namely Jupiter, and I'd like to go with Jupiter. Isn't that a fair inference? Excuse me, Joseph. Isn't that a fair inference from the record? Well, I think the problem with that is that the case law says, and McMahon and Welty and Goldberg, all from the circuit, say that in the absence of an inquiry, there's no way to know. So there can be supposition or assumptions in any instance, but I think the case law... It's the burden on the movement, though, to come forward and show why this 11th hour request should be honored. Well, I mean, it would be the burden of the defendant if there were an inquiry. And the case law, and Welty says, but without even a minimal inquiry... You're saying it's the government's burden to show that...  So it's the movement's burden. It is the movement's burden, but... And the lawyer says, no, there's no breakdown. You know, I'm ready to go. There's no breakdown. And defendant doesn't say, oh, wait a minute, there is a breakdown. I don't know what he's talking about. Well, it is the defendant's... It would be my burden. It's my position. It would be my burden if there had been a direct inquiry of the defendant, and Judge Gomez had determined that the defendant's explanation was not satisfactory. But that didn't happen here. It didn't happen. So you're saying it's not your burden? It is not my burden because the... So whose burden is it to show that counsel should be substituted? Well... It's nobody's burden? You said it's not the government's burden and it's not your burden. Well, on appeal, Your Honor, it's not my... No, no, no, at trial. At trial? Whose burden? It's the movement's burden. It is the defendant's burden. And there was nothing proffered. But the case law suggests that it is an inquiry of the district court that is required. That's the district court's burden. All right. It is the district... Can we move on to 924C? Absolutely, Your Honor. Absolutely. Why doesn't our decision in Cassiano control that issue? Well, it... And I recognize there's, you know, circuit authority. You did a good job, you know, explaining how there's circuit authority from other circuits that help you. But don't we have to... Aren't we stuck with Cassiano? The factual distinction that I could make with Cassiano, Your Honor, is that Cassiano, from my reading of the facts, and the opinion is very explicit as to the facts, we have... It is a continuing offense, the carjackings, the kidnapping, are continuing. In my view, this case is different in the sense that it was a simultaneous act, the act of the shooting of... That's true. You've got two predicate crimes, though. Isn't that the critical similarity? The other circuit cases that you explained disagree with what we said in Cassiano regarding predicate offenses being the measuring stick. They instead refer to uses of the firearm, correct? That's correct. All right. But here, in both this case and in Cassiano, you have distinct crimes, namely attempted murder and armed robbery. And that is true. So we are stuck with that predicate offense frame of reference, right? Well, then I look at Diaz. And I look at the way Diaz deals with the 924-C and what is the unit of prosecution. But Diaz doesn't change Cassiano, doesn't... It doesn't discuss Cassiano, as far as I recall, and it certainly points to a different aspect of the operation of 924-C, which is a single, well... I have a hard defense in that case. It's just drug trafficking. Right, right. That's it. So there's no reason for it to discuss Cassiano because it's only got one predicate offense. We've got two predicate offenses here, as Judge Hartman has pointed out, and Cassiano seems directly on point. As a matter of fact, in Diaz in footnote 3, it says, Cassiano does not govern because the government there charged more predicate crimes than the section 924-C violations. Very well, and I can see that. I look to Diaz as what I consider to be the trend toward analyzing what is the unit of prosecution in a 924-C case. And it seems to me that the cases, and then Curtin out of the Seventh Circuit, Phipps out of the Fifth Circuit, Finley out of the Second Circuit, talk about a simultaneous act that involves two offenses where one firearm is used. Even if we thought that made sense. We've got what we've got, right? We've got our own binding precedent that we have to follow, right? I mean, the Tenth Circuit says how many times you use a firearm. I mean, there are different tests in different circuits, but we've got what we've got. We're bound by it. Is there any way you can distinguish Cassiano? And if there isn't, maybe we should be talking about some of these other double jeopardy arguments that you've got. Well, the factual distinction that I have posed to the court between this case and Cassiano is the simultaneous nature of the commission of the predicate acts as opposed to Cassiano, which is the continuing nature of those acts. Got it. Understood. Maybe we can move to your argument, which brings up some serious issues about Counts 6 and 7, attempted murder, first-degree assault, intent to murder, under Virgin Islands law. Right. And I assume the court will allow me. Go ahead. We'll give you some extra. Let's tack on five minutes, okay? Thank you. Thank you. Thanks. Okay, with regard to – and this, I guess, requires this court to divine or analyze Virgin Islands law. You argue one of them has to go, 6 or 7, right? That's correct. And the case law that I've cited, the Broody case and the Tyson case, I think support this position pretty clearly that under the statute, the 2253 statute and Virgin Islands, Section 14, Virgin Islands Code 104, that because – and now we're back to the facts of this case and a simultaneous act that caused the charging of more than one crime. Well, let's look at Blockburger. You acknowledge or you say Blockburger's the test, right? There is the Blockburger test, but also the statutory interpretation of the statute itself of conviction and also the 104 of the Virgin Islands Code. Right. Stick with me on the Blockburger test here for a moment. You say that 6 and 7 have to go because they're essentially the same, but isn't it the case that, you know, you may have some first-degree assaults that are attempted murders, but not all first-degree assaults are attempted murders, that you'll have some overlap there, but not perfect overlap because you could have a first-degree assault that was not an attempted murder, right? Well, that is true, I think, under the – Yeah. So logically, there are elements that you need for attempted murder that you don't need for first-degree assault. And so under the Blockburger test, you've got separate crimes and not a double jeopardy problem. Is that right? I think under the facts of this case, the shooting of the security guard or the armed money carrier is both – that follows the assault and the allegation of the attempted murder. I understand that you're saying factually here they are the same, but is that how Blockburger works? Is Blockburger set up to say if in these particular circumstances, one is a subset of the other, then it's double jeopardy? There is Blockburger set up as a test that would say if you can – if there is an element that's needed to prove one and not the other, then you've got separate crimes and you don't have double jeopardy. And Blockburger is – yes, Your Honor, it is a strict elements – it's an elements test. Okay. So the better argument is under 104, then? Yes. Right? Yeah. Okay. I would agree that – So let's assume we agree with you that 6, 7, and 8 are duplicative, and then 9 and 11, I think, were the other two. Let me get my sheet out because it's – I think you said 6, 7, and 8 on the one hand and the 9, 11. Even if we agree with you, if I'm not mistaken, those crimes – 6, 7, and 8 were all 15-year penalties but concurrent, and 9 and 11 were both 5-year concurrent? That's correct. So – 14 and 15 too, I think. 14 and 15 are the 5 years. Right. And 9 was 5 years as well. No, 11. I'm sorry. 11, 14, and 15. Okay. But if we agree with you that those should have been melded or they were duplicative, does that matter? I mean, under the concurrent – we have this concurrent sentence doctrine, right? I mean, I suppose we could vacate duplicative counts, but it doesn't really change the sentence, does it? It very well may not. I mean, if one of them is permitted to stand, but, you know, I think it's incumbent to – To vacate the duplicative. To be sure that he is not sentenced on something that violates 104. I'm sorry. How does 104 interact with 2253? Is 2253 just the sentencing enhancement? What is it? I mean, is it a substantive offense? How does 104 interact with Section 2253? Well, 2253, as my understanding, is the unlawful possession of a firearm. Right. And does it act – explain to me whether 104 has the same applicability with regard to that offense as any other. Does it? I would believe that it does. My understanding from reading the cases is that because the 2253 is a firearm, unlicensed use of a firearm, possession of a firearm, because we have one use of a firearm, these are duplicative counts. And that's why under the operation of 104, he can only be punished. He cannot be punished under all three. Well, what is the exact remedy under 104? Is it one stays and the – I'm sorry, there's only a sentence under one of the counts, the others are stayed? That's what I read out of Tyson. Okay. Right. Yeah. And then once the sentence is served, they're vacated, I guess, right? I would imagine. Okay. And, again, the law says they can be charged and someone can be found guilty of violating multiple provisions, but you can only be punished for one offense. We're really just talking about the sentencing aspect. That's correct. I see my time is up unless he would afford me more time on it. That's it. Thank you. Thank you. We'll see you on the rebuttal. Thank you. Good morning, Your Honors. David White for the United States. Maybe you could start where your counsel left off. We obviously had a pretty – we had a discussion about some of the double jeopardy issues here. Maybe you could deal with them. Yes, Your Honor. The United States does not believe that there is a double jeopardy problem here because, for one, there is the Blockberger test and the government believes that this is a straight Blockberger analysis. So for all the counts in which there is an alleged problem with double jeopardy, analyzing the elements in a Blockberger leads to the conclusion that, well, different counts have different elements. Maybe – I'm sorry. I was just going to say, why don't you go right to 104? Wrestle with the 104 thing, okay? We seem to have got agreement here that maybe under Blockberger there's not a problem, but there is – you chose to charge and to pursue claims or counts under Virginia's law, and there is this section 104, and the Supreme Court of the Virgin Islands has spoken pretty explicitly about that in the Williams case. How do you get around that? Your Honor, I think that the response to that is 2253A is a sentencing enhancement, and it provides for sentencing enhancements for the underlying crimes. And so – and the legislature of the Virgin Islands has said that is permissible to have these sentencing enhancements, and there's not a double jeopardy problem because that – Yeah, but the legislature also says you can't be punished for the same conduct more than once. That's correct, Your Honor, but here – On 6, 7, and 8, he's been punished three times for the same conduct. Your Honor, the answer to that, though, is that the legislature has also concluded that there – or, excuse me, the Supreme Court of the Virgin Islands has also stated in Phillips that – excuse me, Phillips, that there's this multiple victims exception to that rule, and – But we don't have multiple victims. Yeah, you've got – There's acquittal on Bougainville. Well, but still, there was the – the United States believes that there was because there was Bougainville and there was – Just because you believe it doesn't mean the jury agreed with you. The man was acquitted of the crimes of attempted murder, use and discharge of a firearm during attempted murder of Bougainville, right? And also acquitted of attempted first-degree murder of Bougainville and use of unlicensed firearm during an attempted murder on Bougainville. That's correct, Your Honor, but again – But don't we have to accept that as – I mean, I know your theory of the case was that he violently attacked both men, but the jury didn't agree as to Bougainville. Well, that's correct, Your Honor, but again, because these are – Well, I'm afraid I'm going to be repeating myself and not making anything more that makes sense. Well, it's just that you don't seem to be giving Section 104 much credence. You're kind of giving it the backhand. This seems like serious – It's up to you to persuade us, but it seems like a pretty big stumbling block. Your Honor, it is a challenge to present, but again, I guess my argument would be – I don't think that Judge Hardeman was persuaded that even though there were the acquittals on the counts with respect to Mr. Bougainville, the sentencing enhancements of those can still apply. I guess as an alternative argument – Wait, wait, hold on. Slow down a little bit. If I heard what you just said correctly, you're saying that a criminal defendant can have enhanced punishments based upon conduct that was charged, prosecuted, and acquitted. Did I hear that right? Your Honor, I'm sorry. You did hear that and I misspoke. I completely – I'm sorry. I was thinking, quite frankly, about 924C and – Okay. I'm totally fine. We'll get to that, but let's try to get to the finish line on 104 because – I can't say I have a lot of experience with 104. I don't. This is my first opportunity to evaluate it, but it would appear that 104 says that it was perfectly proper for the government to charge, prosecute, and convict Mr. Hodge of counts 6, 7, and 8, but because it all came out of one occurrence, he can only be punished for one of those crimes. That's correct, Your Honor. And here, because we have the concurrent sentences on those counts, I don't – the government doesn't – It doesn't change the sentence. No, Your Honor. All right, so we should vacate two of the convictions and let the sentence stand. That certainly – Or do we stay the – Or do we stay them? Well, under the Virgin Islands Law, the case law suggests that they are stayed. Okay. And I'll be perfectly honest. I'm not quite sure what that means because I've never seen – What does that mean? Thank you. I was going to ask you, what does it mean? There you are. What do we do with it? Your Honor, I have never found an answer to that question, and I honestly don't know, and I'm sorry I don't know. The only thing I – what I gather from reading the case law is that if a conviction is stayed, if the judgment – if some of the convictions get overturned on appeal or there is a different – a different disposition with respect to guilt is rendered on appeal, then the appellate court can send the case back to the district court and say what you need to do is stay one of these – stay the judgments on which we found, you know, no liability or reversed. The further effect of that stay, I don't know. Does the conviction itself constitute a punishment? Does the fact that you have a conviction with all the potential that might have later down the road for collateral consequences for enhanced sentencing, for example, should the man ever get in trouble again, does that mean that the conviction all on its own constitutes a punishment whether there's a concurrent sentence or not, and that regardless of what language has been used before in the face of 104, if there's an acknowledgment that these are convictions which violate that statute, the overlapping convictions need to be kicked? Yes, Your Honor, I would agree with that. Okay. I think that's correct. I think that that was – That's the Ball case? Yes, Your Honor. And then on 924C, I assume your argument is, you know, as was briefed that Cassiano controls. Is there anything more to add on that, or do you have any response to what counsel said on that? No, Your Honor. The government is certainly happy to answer questions, but the government does believe that Cassiano controls this because as in Cassiano here, there are two separate underlying predicate offenses as were in Cassiano, and the predicate offense is the union prosecution in this circuit. But your adversary would like to – has argued to us that Diaz ought to apply. Well, Your Honor, the government doesn't believe that Diaz does apply because in that case there was only one predicate offense that was charged and only one on which the defendant was convicted. Diaz simply doesn't apply, and Diaz itself said that Cassiano doesn't apply to the suit because in Cassiano there were two predicate offenses, thus the two 924C convictions. Diaz and Cassiano are certainly, I think, harmonized to the extent that they use this circuit's rule for determining the union prosecution, which is the number of predicate offenses. My opponent adverted to the fact that, you know, different circuits take different approaches to this, and that is absolutely true. In fact, there is a wide variety of approaches that circuits take to this thorny problem. This circuit, however, uses a predicate offense for the union prosecution, and that's why Cassiano applies. With respect – oh, I'm sorry. Your Honor, on the 924C, the government, again, doesn't really have anything to add to that. I want to ask you a question too about Dowling and Braithwaite, if I could. There's – in Braithwaite we were talking about a federal statute for conspiracy to import and distribute drugs and said it wasn't sufficiently distinct. That was the language we used from a Virgin Islands statute for conspiracy to traffic in drugs. And the question I've got really bears on this idea that maybe a general sentence, if you imposed a general sentence, then that wouldn't be problematic in a circumstance like that. Can a general sentence cure a double jeopardy problem? Is that good law? Do you understand what I'm trying to get at? Your Honor, I believe that I do, and I believe that the answer is yes. That is what a general sentence does, which is what the district court did here. It took the territorial offenses and gave one general sentence as to all of them. And the territorial offenses that were the non-2255-3As. Then it took the 2255-3A offenses and gave a concurrent sentence as to them. And a general sentence would cure that problem, just as in if the fact that the panel decides that, you know, two of these convictions have to be reversed on double jeopardy grounds. Again, the general sentence here doesn't really alter because the court can just vacate two of those convictions. I just find that, you know, Judge Becker wrote separately and Braithwaite pointed out the problems with the logic there. But I guess it is what it is, right? We've got precedent. Okay. Can I ask about the interplay between counts six and seven? I mean, your adversary talked about it a little bit. I mean, is there any way to attempt to murder without perpetrating violence with intent to injure? I'm sorry. Let me put this another way. Because I'm just wondering whether one is a lesser-included offense of another, really. Your Honor, can both stand? Both can stand because one, while there indeed may be overlap or similarity, I think that it's possible to have one without the other. I think that you can have, like, murder without, you know, or assault without having murder. One doesn't necessarily include all of the others. That's the easy one, but it's harder to have murder without assault. Yes, Your Honor. And for that, I don't know. I think one would – I can't right now think of a circumstance in which the assault wouldn't be included in the murder, but not necessarily the reverse. Right. You could, I suppose, get into definitions about what constituted an assault and whether a poisoning was an assault, for example. But then you start spinning hypotheticals. Well, of course, and, you know, that's one of the things that's percolating now in light of the crimes of violence under Tucker and whether poison constitutes assault, and that does open up another can of worms. We have a few minutes. Do you want to discuss the recusal – sorry, recusal – substitution of counsel issue? Your Honor, in that case, the district court did have a colloquy with the Federal Public Defender's Office Is that adequate? Do you need to have a colloquy with the defendant, him or herself? No, Your Honor, you really don't. And in instances, one of the things, the argument that the defendant makes is he presumes dissatisfaction. Well, here there was no dissatisfaction. And the cases from this court, I think, like Gillette and Welty that discuss this issue, the defendant had very clearly expressed this dissatisfaction with his counsel. I believe in Gillette, the defendant had complained openly in court and had fired two of his prior attorneys. There was no equivocation. Is this simply a case of where the defendant had trouble coming up with the money to hire private counsel and then the money came in at the last minute? That's what it seemed to be, but I'm not clear on that. Your Honor, that may be the record doesn't disclose that. Judge Gomez adverted to the fact that they're – you know, he didn't say, I think there's gamesmanship going on, but that's a consideration that I have, particularly in light of the fact that this issue had come up some weeks earlier and Mr. Joseph never sought to substitute himself as counsel. And, in fact, Your Honor, all he did was fax something to the court, and that's not an entry appearance on the docket for purposes of I'm committed to be here and represent you. And that is a distinction. Anything else, counsel? No, Your Honor. Okay. Thank you so much. Thank you. If I could address the government's arguments about the choice of counsel issue, because I think it's really at its base, that's what we're dealing with, a choice of counsel issue. And as late Justice Scalia said in Gonzales-Lopez, it's a fundamental constitutional right to have counsel of choice. Now, there are certain reasons why a defendant could be denied his counsel of choice, but as I'm reading these cases and the cases out of this circuit, and Judge Hardiman, you were pressing me about, well, whose burden is it? The cases say that in the absence of an inquiry as to the defendant's dissatisfaction, then there's nothing that ---- But, again, I'm fearful that you're putting the rabbit in the hat there by presuming dissatisfaction. I don't see it. We've seen myriad cases where there is a long train of complaints by the defendant with appointed counsel. My lawyer's not calling me back. My lawyer won't talk to my witnesses. My lawyer's not investigating. We see those things all the time, and this record is devoid of any of that. And I can't quite figure out from this record, maybe you can help us what happened here other than to conclude that, you know, it's nice to hire private counsel, but that can be expensive, and sometimes it takes a while to marshal the funds to do that. And if that's what happened here, it doesn't mean that Attorney Jupiter was doing anything wrong or that the defendant was dissatisfied. It just means that, you know, I can get a better lawyer if I marshal the funding. And I think Gonzales-Lopez says that the defendant is entitled to the lawyer that he feels is best. Of course, but not at the last minute when you're picking a jury. Yeah, Gonzales-Lopez, look, there's a test, isn't there? You've got to show there's a conflict of interest or a complete breakdown in communication or an irreconcilable conflict, and none of those things are present here, are they? Well, they're not present because there wasn't an inquiry. No, there was an inquiry. Let's talk about the rabbit in the hat. Your assertion is that the inquiry has to be made specifically to the defendant personally and that words have to come from the defendant's mouth. But that is the very question that you've acknowledged as you have to, that you have no authority for, that there's nothing out there that says that the inquiry has to be made to the defendant personally because there was an inquiry. It was made to the defendant's agent, Mr. Jupiter, and Mr. Jupiter said emphatically on the record with the defendant sitting there who made not a peep of disagreement that none of those things were present, right? Well, there was a question as to whether there was a conflict. I don't think there's anything in the record that Attorney Jupiter was asked, you know, is your client dissatisfied with you in any way? So there was no direct question about dissatisfaction. It was only is there a conflict and also his preparedness. Are you in touch with him? Are you prepared to go forward? Has there been a breakdown in communication? Those things were asked about, right? I'd have to look at the transcript again specifically, but I don't know that there was a specific question about the reason for the defendant's desire for another lawyer and whether there was any dissatisfaction. And I understand the agency idea that the lawyer speaks for the client, but in a situation where the issue is the relationship between the defendant and the agent, I think it would make sense to ask the defendant himself instead of relying on the agent, who is sort of the object of the accusation. That might make sense perhaps, but that's not what the case law says apparently yet. Even if we were to agree with you that that's the better practice, how do you get from better practice to constitutional violation warranting overturning of a conviction? That's a pretty big jump, isn't it? Well, only to say, and, you know, I'm starting to repeat myself and I apologize, is that the case law seems to say that in the absence of the inquiry there's reversible error. Yeah, there you go, in the absence of the inquiry. Now we're back to whether the inquiry was adequate. I understand that, and the cases all suggest that the defendant was asked directly. And so with that, my time is up. I thank you for your attention and consideration. Thank you, counsel.